STATE OF NEBRASKA, APPELLEE, V. WILLIAM R. KENNEDY ET AL., DEFENDANTS: ELIZABETH KENNEDY, INTER-- VENER, APPELLANT.

FILED MAY 11, 1928. No. 25639.

*Frank A. Dutton*, for appellant.

*O. S. Spillman, Attorney General, Harry Silverman* and *H. F. Mattoon, contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON, EBER- LY and HOWELL, JJ., REDICK and WHEELER, District Judges.

ROSE, J.
This is a controversy over the possession of a Ford coupé.

which had been used unlawfully by William R. Kennedy, defendant, for the transportation of intoxicating liquor on a public highway in Gage county. He was arrested and accused of that offense. In the information the coupé was designated with him as a guilty party with a view to forfeiture. Defendant pleaded guilty in the district court and was sentenced to serve a term in the county jail. In the criminal proceeding his wife, Elizabeth Kennedy, intervened, and pleaded that she was the owner of the coupé; that defendant had no interest in it or any right to its posession or use; that he wrongfully took the coupé from her garage without her consent or knowledge in violation of her orders, and that she had no part or interest in the use of the coupé for the transportation of intoxicating liquors; that at the time she did not know it was taken or used unlawfully. Intervener prayed for the restoration of her coupé. The material facts upon which she relied were put in issue by an answer on behalf of the state of Nebraska. The issues were tried to the district court, a jury being waived. As a result of the trial the sheriff was ordered to sell the coupé and turn the proceeds over to the school fund. Intervener superseded the judgment and appealed.

The principal assignment of error is the insufficiency of the evidence to sustain a forfeiture. The evidence shows beyond a reasonable doubt that intervener was the owner of the coupé and that her husband, the convicted defendant in the criminal prosecution, had no title to or interest in it. Intervener and her son so testified and their evidence is uncontradicted. The automobile dealer testified positively that he sold the coupé to intervener; that it was not to be used by intervener's husband; that he would be glad to sell her a car any time; that she bears a very good reputation; that he would not sell her husband a car, and, when questioned from the bench, gave utterance to a suspicion based on hearsay that intervener's husband might be a bootlegger. The salesman also testified that the coupé was sold to intervener. The latter testified that she made the initial pay-

ment with $200 of her son's money, gave her individual note for the remainder, and that she had paid $50—evidence not disputed.

Notwithstanding the uncontradicted evidence by unimpeached witnesses not discredited, it is argued on behalf of the state that the trial court was justified in finding that the coupé was the joint property of intervener and her husband, having been purchased with their mutual earnings in conducting a restaurant. This view is contrary to positive testimony of credible witnesses and depends largely on admissions brought out on cross-examination of intervener who, in answering "yes" to questions, testified in substance: For some years she and her husband had been engaged in the restaurant business, she working part of the time during the day and he at night. They earned what property they have operating the restaurant. The money she spent for the car was earned in that business. This testimony indicates candor and fairness. It does not tend to disprove or to overturn the conclusive evidence of her ownership. It does not imply a partnership in, or approval of, the bootlegging of her husband. It does not indicate that she did not earn and hold her money in her own right or that she was not absolute owner of the coupé or that she permitted her husband to use it for an unlawful purpose.

Conceding, nevertheless, that intervener is the owner, it is insisted that there is evidence of the husband's use of the coupé, and of other cars, with intervener's consent in connection with the business of the restaurant. Evidence of this nature is indicated by the following summary of its import: The husband used his wife's car to deliver meals from the restaurant to prisoners in the county jail. The keys to the coupé were left in a glass in their home where they were accessible to any one knowing where they were. Husband and wife lived in the same home and their relations were friendly. February 24, 1926, the date of the husband's arrest for unlawfully transporting intoxicating liquor, he had been to Lincoln to collect bills for the res-

taurant. Prior to the arrest of the husband he had been seen driving the coupé. The son who worked in the restaurant had a car of his own. Intervener could not drive a car. Is the inference from this evidence sufficient to authorize a forfeiture in view of direct, positive and uncontradicted evidence to the contrary? The answer depends on evidential facts not directly contradicted and in part indicated as follows: Intervener owned the restaurant and her husband and son worked for her, the accounts being kept and the checks being issued in her own name. Meals for prisoners had been delivered generally in other cars. The husband, as shown by evidence already stated, was never permitted to use the coupé and wrongfully took it from the possession of his wife in violation of positive orders. He had been directed by his wife to take the bus to Lincoln to collect bills for her on the day of his arrest. Instead he took the coupé from the garage in the morning before his wife was out of bed and she did not know it was gone until the son reported the fact to her. She had the coupé a short time only and her son was teaching her to drive it. The husband was found in a state of intoxication and was guilty of transporting intoxicating liquor in violation of law. There is nothing in the record to indicate that the son or the intervener had ever had any part in the diabolical traffic of the husband and the father. If the wife, a law-abiding citizen making an honest living in spite of her husband, knowing his propensities, anticipated what happened, she would naturally want to run her business in her own name, to have her own coupé and learn to drive it, to deny her husband the right to use it—these, under all the circumstances, are logical inferences, rather than the giving of consent to the use of her coupé for a purpose that would tempt her husband and bring grief and disaster upon herself and family. These inferences are in harmony with uncontradicted testimony of credible witnesses. The only note to the contrary is found in testimony of a police officer who no doubt conscientiously said he had several times seen the husband driving intervener's coupé. He

858

frankly admitted, however, that he did not know the driver was a trespasser. When asked on cross-examination if the car might not have belonged to a son, he did not answer; but upon further questioning, he testified: "I would say this was the same one"—giving as a reason he had remarked at the time that the husband "wanted to watch his step or we will have another Ford coupé." He was unable to give the number of the Ford coupé or the license number of it. This testimony, contrary to the direct evidence and the proper inferences from all the circumstances, does not prove consent of intervener to her husband's use of her coupé or overturn the uncontradicted evidence to the contrary.

For the purposes of forfeiture inferences from circumstances may be sufficient to justify a finding that the owner of a car consented to its use by a bootlegger, but in the present case the conclusion is that the evidence is wholly insufficient to sustain the judgment of the district court. For that reason it is reversed, with directions to sustain the petition of intervener and to restore to her the Ford coupé.

REVERSED.